UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SGS (XXX-XX-0092) | CIVIL ACTION NO. 09-cv-0408 |
| VERSUS | JUDGE HICKS |
| US COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Plaintiff is a female born in 1951. She left her last job as a school bus monitor in December 2004 when she moved with her husband from Dallas, Texas to Coushatta. Plaintiff filed an application for disability benefits. ALJ W. Thomas Bundy held a hearing and issued a decision that denied the claim. The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

## Issues on Appeal

Plaintiffs lists as errors that the ALJ did not have substantial evidence to support his decision and that he failed in his duty as it relates to the burden of the Agency to show that there are jobs available that Plaintiff could maintain. In support of these two general and broad assertions of error, Plaintiff's brief makes a wholesale attack on the ALJ's assessment of the competing medical opinions and reports that were assembled in this case.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

**A. Introduction**

The Social Security Act entitles certain "disabled" persons to disability benefits or supplemental security income benefits. The act defines disabled persons as those who are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. The Act requires the Commissioner to establish by regulation uniform standards for the adjudication of claims. The Commissioner has promulgated regulations that include what is commonly referred to as the five-step sequential analysis. See 20 C.F.R. § 404.1520 (governing claims

for disability insurance benefits) and § 416.920 (parallel regulations governing claims for supplemental security income). The analysis is described in cases such as Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003)and Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). A finding against the claimant at any step ends the analysis and results in denial of the claim.

**B. ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity (step one) since her alleged onset date in December 2004. He next found that Plaintiff had the following severe impairments (step two): fibromyalgia, degenerative joint disease in her hands and knees, bilateral carpal tunnel syndrome, and early degenerative disc disease of the cervical spine. At step three, the ALJ found that those impairments did not meet or medically equal one of the "listed impairments" in the regulations that are deemed so severe that a finding of disability is required without regard to the claimant's age, education, or other vocational factors.

The ALJ then engaged in a detailed review of the medical records and other evidence to assess Plaintiff's residual functional capacity ("RFC"). He found that she had the RFC to perform light work, except an inability to perform more than occasional manipulative tasks with her hands. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total

of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10.

The ALJ then turned to step four, which asks whether the claimant is capable of performing her past relevant work. To determine whether an applicant can perform his past relevant work, the ALJ must assess "the physical and mental demands of the work [the applicant has] done in the past." 20 C.F.R. §§ 404.1520(e) and 416.920(d). If the applicant can still do that "kind of work," the ALJ will find that the applicant is not disabled. Id. This determination may rest on descriptions of past work as actually performed or as generally performed in the national economy. For example, the ALJ may take notice of job data in the Dictionary of Occupational Titles ("DOT") which reflects the requirements of various jobs as performed in the national economy. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Social Security Ruling 82-61.

Plaintiff testified at the hearing that she was employed in Dallas as a monitor on a bus for special education children. She said she would strap the children into their seatbelts, or strap their wheelchairs with a special ratchet strap that held them in place. Plaintiff would be seated when the bus was moving, but she would get up to help children on or off the bus at stops. Plaintiff would stand inside the bus as the driver, stationed outside the bus, operated a lift for children in wheelchairs. Plaintiff would bend down and hold on to the chair as it was coming up the lift, and she would then roll the wheelchair to a spot where it could be strapped in. Tr. 277-79 and 287-88. The ALJ asked vocational expert ("VE") Mary Walker

about the exertional and skill level of the job. The VE testified that the job would be considered light and unskilled. When asked about the manipulative requirements, she replied, "Not present." When asked for her best guess, she estimated the manipulative requirements, based on Plaintiff's description of the job, were occasional (meaning from very little up to one-third of the time). Tr. 287.

The ALJ found that the job described was consistent with that of school bus monitor as defined in the DOT. He next held that Plaintiff's former job, as generally performed in the national economy, did not require more than occasional use of the hands, so Plaintiff's RFC permitted her to perform the demands of the job. Accordingly, the ALJ found at step four that Plaintiff was not disabled. Tr. 30.

**C. Plaintiff's Arguments**

Plaintiff's appeal focuses on the RFC and degree of limitations assessed by the ALJ. That assessment was based largely on a weighing of the various medical reports and opinions. The records of both the treating and consulting physicians were discussed at length in the ALJ's decision. See Tr. 22-29. Dr. Geppert, in Dallas, first diagnosed Plaintiff with fibromyalgia in 2001. Plaintiff saw him a number of times. He prescribed medication and also later diagnosed osteoarthritis of the hand. He encouraged Plaintiff to engage in aerobic exercise.

Plaintiff saw Dr. Robert Goodman in 2005 after she moved to Louisiana. It had been almost one year since her last visit to Dr. Geppert. Dr. Goodman assessed fibromyalgia,

degenerative joint disease, and carpal tunnel syndrome. Despite these conditions, Plaintiff had a 75% of normal range of motion of the cervical spine. Her shoulders, elbows, wrists and hands were normal except for some nodes. Range of motion of the other joints was normal, and a straight-leg raise test was negative to 90 degrees. Tr. 129-31.

The state agency that initially handles disability applications referred Plaintiff to G. Thomas Arbour, Jr., M.D. for a consultative examination in April 2006. Dr. Arbour found no muscle atrophy or spasms, and Plaintiff demonstrated grip strength of 4/5 and adequate fine motor movements, dexterity, and the ability to grasp objects with both hands. She walked normally, and had 5/5 motor strength in all muscle groups with no sensory or reflex deficits. There was evidence of osteoarthritis of the hands and indications of carpal tunnel syndrome, but no other findings to explain the pain that Plaintiff complained of. Dr. Arbour opined that, despite Plaintiff's complaints, she had the ability to perform work that included sitting, standing, walking, and bending, but she may have limitations performing tasks that require "excessive use of the hands such as lifting, typing, or handling." Tr. 148-50.

Plaintiff returned to see Dr. Goodman in November 2006, almost a year after her last visit. She reported that her fibromyalgia was worse and that her attorney wanted her to request a functional capacity evaluation. Dr. Goodman said that he did not perform those assessments and could refer her elsewhere. Plaintiff said that she would think about it. Tr. 236.

Plaintiff, at the request of her attorney, was evaluated by John P. Sandifer, M.D., in January 2007. Dr. Sandifer conducted a physical examination and found significant orthopedic and rheumatological problems. He found that Plaintiff could not do *any* overhead lifting and that her below-shoulder lifting would be restricted to no more than five pounds occasionally. He added that Plaintiff would have difficulty with fine motor skills because of her carpal tunnel syndrome and could not do repetitive pushing or pulling. Her sitting would be limited to no more than 30 minutes at a time and no more than three hours in a workday. Standing would be equally limited. Plaintiff would also be unable to perform repetitive stooping, crawling, or climbing and would need to avoid extremes of cold temperature. Tr. 242-44.

Richard Galloway, Ph.D., performed a vocational evaluation at the request of Plaintiff's attorney. Based on the restrictions suggested by Dr. Sandifer, he said that Plaintiff could not be expected to return to her previous work. Tr. 94.

A state agency examiner reviewed the medical records and completed an assessment form. The examiner found that Plaintiff retained the ability to perform light work, but with no more than frequent handling. Tr. 32-41. This finding was consistent with Dr. Arbour's report.

Plaintiff argues that the ALJ should have favored the opinion of Dr. Sandifer. If the limitations Sandifer suggested were adopted, Plaintiff would not be able to perform her past job. On the other hand, consultative examiner Dr. Arbour found limitations that would

permit Plaintiff to perform her past work. Dr. Goodman and Dr. Geppert did not suggest any particular limitations with regard to lifting, standing, or otherwise, but their records do reflect the diagnosis and some treatment of the conditions that give rise to the limitations at issue. The ALJ noted that neither treating physician had placed physical restrictions on Plaintiff's activities, and Dr. Geppert had even encouraged aerobic exercise. The ALJ wrote that he had fully considered Dr. Sandifer's opinion, but he noted that Sandifer was not a treating physician and had been consulted not for treatment but as part of an effort to generate evidence for the application. The ALJ noted that Dr. Sandifer did not review any diagnostic studies or obtain additional X-rays, and no other physician had observed some of the conditions that Dr. Sandifer included in his report.

There was also conflict between Sandifer's findings about limitations of the shoulder area and Dr. Arbour's finding that the shoulders had a full range of motion. There was no history of treatment for such a condition. The ALJ concluded that Dr. Sandifer's conclusions were based in large part on the claimant's subjective complaints of pain, which were not fully supported by the medical history. Accordingly, the ALJ found Dr. Sandifer's suggested limitations too restrictive and not well supported by the remainder of the record. Dr. Galloway's report was discounted because it relied heavily upon Dr. Sandifer's limitations. Tr. 28-29. The ALJ found that Dr. Arbour's opinion, on the other hand, was well supported by the evidence of early osteoarthritis in the hands and spine. Accordingly, his opinion and that of the state agency were afforded significant weight. Tr. 29.

The ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994), quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). This is not a contest that pits the opinion of a treating physician (ordinarily afforded more weight) against a non-treating physician. Rather, the ALJ had to choose between the competing opinions from two non-treating consultative physicians who each examined Plaintiff. The ALJ's written decision shows that he carefully considered both opinions, compared them to the other evidence of record, and gave an objectively reasonable explanation for why he favored Dr. Arbour's opinion over that of Dr. Sandifer in this case. This aspect of the ALJ's decision does not, therefore, deprive it of substantial evidence.

After the ALJ issued his decision, Plaintiff obtained a letter from Gregory Bell, M.D. Dr. Bell wrote that Plaintiff had been a patient of his for "a number of years," and that he was aware of the unfavorable decision. Dr. Bell wrote that he had reviewed the medical and other reports from Drs. Geppert, Goodman, Sandifer, and Galloway and found the medical reports "to be consistent in their diagnosis of limitations" for Plaintiff. He added his opinion that Plaintiff is physically disabled from any type of employment on a regular basis, and he agreed with the limitations set forth by Dr. Sandifer. Tr. 267. The Appeals Council reviewed the letter and, without explanation, found that it did not provide a basis for changing the ALJ's decision. Tr. 5-8.

The Commissioner's final decision, the decision that is to be reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005). Ordinarily, the opinions and medical evidence of a treating physician who is familiar with the claimant's treatments should be accorded considerable weight. Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). But when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's opinion. Good cause includes when the statement is brief and conclusory, not supported by medically acceptable evidence, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485.

The court ordinarily has a reasoned decision from the ALJ as to why a medical opinion was weighed as it was, but Plaintiff's late submission of Dr. Bell's letter post-decision, and the Appeals Council's unexplained decision, essentially force the court to assess the evidence in the first instance. Dr. Bell wrote that he had treated Plaintiff for a number of years, but he did not describe what he treated her for, include any summary of his treatment, or attach any medical records to establish a course of treatment. Accordingly, there is no factual basis to consider him more than a consultative physician with respect to the medical conditions at issue in the application. Dr. Bell stated that he found the medical evidence consistent with respect to the limitations, but the ALJ pointed out that there were

inconsistencies among the opinions. Plaintiff's appeal is based on the fact that Dr. Sandifer's assessed limitations are greater than those assessed by Dr. Arbour. Dr. Bell stated his opinion that Plaintiff was disabled, but a statement or conclusion by a treating physician that a claimant is disabled or cannot work does not mean that the claimant is disabled for purposes of the Social Security Act; that legal conclusion is for the Commissioner to make. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). What is important is the physician's medical findings and opinions about the claimant's health problems and the particular limitations (standing, reaching, lifting, etc.) they impose. It is the ALJ's duty to then decide whether those limitations render the claimant disabled within the meaning of the law. Dr. Bell did not state that he had examined Plaintiff for the conditions at issue, and he did not make any findings of his own about her limitations. He merely adopted Dr. Sandifer's report, and the ALJ gave sound reasons for discounting the Sandifer report and favoring the Arbour report. Dr. Bell's naked endorsement of Dr. Sandifer's findings is not sufficient to tip the scales in favor of the Sandifer opinion and deprive the ALJ's decision of substantial evidence.

Plaintiff's final argument, about maintaining an available job, invokes the Fifth Circuit's Singletary decision, which interpreted disability under the Act to apply to cases in which a person is capable of working for short periods but can not *maintain* a job because his impairment flares up too often. Singletary does not, however, require every decision by an ALJ include a separate finding regarding the claimant's ability to maintain a job. Frank

v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003). An ALJ's finding that a claimant can perform a certain level of work necessarily includes a finding that he is able to perform at that level not just intermittently but eight hours a day, five days a week. A separate and express finding regarding maintaining work is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." Id. See also Dunbar v. Barnhart, 330 F.3d 670 (5th Cir. 2003). The ALJ's basic decision with respect to disability was upheld above, and there is no indication in this record that a separate finding with regard to maintaining employment was required.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **affirmed** and that Plaintiff's complaint be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of July, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE